297 Ga. 532
FINAL COPY

S15A0586. MOHAMUD v. THE STATE.

MELTON, Justice.

Following a jury trial, Faud Abdulaziz Mohamud was found guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. On appeal, Mohamud contends, among other things, that he received ineffective assistance of counsel and that the trial court made evidentiary errors.[1] For the reasons set forth below, we affirm in part and vacate in part.

1. In the light most favorable to the verdict, the record shows that, on the afternoon of July 21, 2010, Mohamud, Airis Evans-Ingram, Brandi Arden, and

---

[1] On November 18, 2010, Mohamud was indicted in Gwinnett County for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. Following a jury trial, Mohamud was found guilty of all charges, and, on October 22, 2013, he was sentenced to life imprisonment for malice murder, 20 consecutive years for aggravated assault, and five consecutive years for possession of a firearm. The verdict for felony murder was vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Mohamud filed a motion for new trial on October 31, 2013, and an amended motion on April 28, 2014. The motion was denied on September 18, 2014, and Mohamud filed a timely notice of appeal. His case was thereafter docketed to the January 2015 term of this Court, and it was orally argued on March 3, 2015.

Mohamud's brother, Liban, traveled to a gas station located in Lawrenceville, Georgia. Arden drove her car, and she chose a parking spot adjacent to a gas pump. Mohamud had told Arden that he wanted to meet someone named "Curt" at the convenience store. A short time later, a blue Crown Victoria pulled into the parking lot, and Mohamud and Liban had a brief verbal exchange in Somali. Then, Mohamud and Evans-Ingram exited Arden's vehicle and approached the blue Crown Victoria from behind. DeAndre Perkins, who had shot and robbed Mohamud on a prior occasion, was in the passenger seat. Immediately, the driver began reversing the Crown Victoria, and Mohamud shot into the car, killing Perkins. Mohamud and Evans-Ingram jumped back into Arden's vehicle, and Mohamud frantically stated, "He [Perkins] had a gun . . . I had to shoot." As they sped away, again, according to Arden, Mohamud stated, "He [Mohamud] was the one that shot him," and, "He [Mohamud] swore on his mom when he saw him he was going to get him." Additionally, Arden was told not to speak to police and that if the police asked about her involvement, to tell them "I wasn't there."

Investigators later recovered a video surveillance recording of the scene of the crime which, from a distance, depicted the sequence of events before and

2

after the shooting. The video does not, however, show Perkins inside the vehicle. Eventually, investigators located Arden and spoke with her regarding the involvement of her vehicle. Soon after, Mohamud was named a suspect and arrested in connection with the shooting.

This evidence was sufficient to enable the jury to find Mohamud guilty of the crimes for which he had been charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Mohamud's defense was that he shot Perkins in order to protect himself, the jury, as the ultimate arbiter of fact, was entitled to reject this claim.

2. Mohamud contends that his trial counsel rendered ineffective assistance by failing to (a) call Evans-Ingram as a witness at trial to support Mohamud's claim of self-defense, (b) call witnesses who would have testified regarding Perkins's general reputation for violence in the community, and (c) request a specifically-tailored jury instruction regarding the definition of a forcible felony.

> In order to succeed on his claim of ineffective assistance, [Mohamud] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing

3

court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Mohamud contends that his trial counsel rendered ineffective assistance by not calling Evans-Ingram as a witness. Using hindsight, trial counsel testified that he should have subpoenaed Evans-Ingram and that he had no strategic reason for failing to do so.

But hindsight has no place in an assessment of the performance of trial counsel, the United States Supreme Court having instructed that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, supra, 466 U. S. at 689 (III) (A). Instead, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id., and to overcome that presumption, [Mohamud] must show that no reasonable counsel would have failed to [call Evans-Ingram as a witness]. See Hayes v. State, 279 Ga. 642, 645 (3) (619 SE2d 628) (2005).

Jones v. State, 292 Ga. 593, 600-601 (7) (d) (740 SE2d 147) (2013). A review of the evidence of record reveals that Mohamud cannot satisfy this burden.

At the motion for new trial hearing, testimony showed that trial counsel

4

interviewed Evans-Ingram prior to trial. Evans-Ingram told trial counsel that, as he and Mohamud walked up to the passenger side of the Crown Victoria, Perkins saw Mohamud, turned his body to the left, reached toward the center console of the car with his right hand, and then turned back toward Mohamud. Evans-Ingram testified that "when [Perkins] turned back around, that's when you could see he had a gun in his hand." Evans-Ingram further testified that Mohamud shot Perkins only after Perkins drew his gun.

At trial, however, the medical examiner clearly stated that Perkins had been shot in his *left* side. The medical examiner explained:

> If [Perkins] was in the passenger seat, he would have to be turned such that the left side of his body is presented toward the passenger window [at the time he was shot]. . . . He would have to be turned significantly around. I don't know that I would say completely around, but he would have to be turned again so that he's presenting his left side towards the passenger window . . . .

The medical examiner's report, therefore, plainly draws into question Evans-Ingram's account of events. At the point at which Evans-Ingram testified that a gun was visible in Perkins's right hand, Perkins was turning toward the right, such that Perkins would have presented the right side of his torso toward the passenger window, not the left side in which he was actually shot. As a

5

general matter, decisions regarding who will be called as a defense witness is a matter of trial strategy and tactics, and these decisions, even if erroneous, do not constitute ineffective assistance of counsel unless they are so unreasonable that no competent attorney would have made them under the circumstances. Miller v. State, 296 Ga. 9 (4) (a) (764 SE2d 823) (2014). Given the conflict between the location of Perkins's wound, the testimony from the medical examiner, and Evans-Ingram's account of events, a competent attorney could have reasonably concluded that it would be better strategy not to call Evans-Ingram as a witness rather than allowing the State to attack inconsistencies in his testimony on the stand. Accordingly, Mohamud has failed to prove that he received ineffective assistance on this ground. Jones, supra.

(b) Mohamud contends that trial counsel rendered ineffective assistance by failing to call witnesses who would have testified regarding Perkins's general reputation for violence in the community. A review of the transcript shows that, during trial, Arden testified that Perkins had attacked Mohamud in the past and had, in fact, shot Mohamud in the leg. Given that the jury heard evidence that Perkins had violently assaulted Mohamud in the past, it cannot be said that Mohamud was prejudiced by the omission of general information of Perkins's

6

reputation. As a result, the trial court did not err by rejecting Mohamud's claim of ineffective assistance based on this contention.

(c) Finally, Mohamud contends that trial counsel rendered ineffective assistance by failing to request a specifically-tailored jury instruction regarding the definition of a forcible felony. Mohamud further argues that trial counsel should have requested a justification instruction which included the definition of aggravated assault as a forcible felony. The trial court's charge, however, fairly instructed the jury as to when a homicide is justifiable and when an act of self-defense is warranted. As a result, even if trial counsel acted deficiently by failing to request additional instructions, Mohamud has failed to prove prejudice stemming from any such deficient performance. Holmes v. State, 273 Ga. 644, 647 (4) (543 SE2d 688) (2001). Accordingly, in the absence of prejudicial error, Mohamud has failed to support his claim of ineffective assistance.

3. Mohamud argues that the trial court erred by excluding evidence of a violent robbery committed by Perkins against a third party, despite the fact that, prior to the murder, Mohamud had no knowledge of the robbery. We disagree.

Mohamud bases his contention on Chandler v. State, 261 Ga. 402, 407 (3) (c) (405 SE2d 669) (1991), in which this Court created an evidentiary exception

7

"permit[ting] a defendant claiming justification to introduce evidence of specific acts of violence by the victim against third persons." <u>Chandler</u>, however, was decided under Georgia's old Evidence Code, and, it related specifically to the application of that old code. The present case, because it was tried on or after January 1, 2013, is subject to the new Evidence Code, under which the admissibility of evidence of a victim's character is governed by OCGA §§ 24-4-404 and 24-4-405.

OCGA § 24-4-404 (a) (2) states:

> Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for: . . . (2) Subject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor.

OCGA § 24-4-405 (a) further provides: "In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion." Therefore, as a general rule, character evidence of a victim is limited to

reputation or opinion, *not* specific bad acts.[2] Therefore, the evidentiary rule set forth in Chandler does not remain viable under the new Evidence Code, and Mohamud's argument based on this outdated precedent fails.

4. Mohamud contends that the guilty verdict for aggravated assault should have been merged into the conviction for malice murder for purposes of sentencing. OCGA § 16-1-7 (a) (1) prohibits convicting a defendant of more than one crime if one crime is included in another. Drinkard v. Walker, 281 Ga. 211, 212 (636 SE2d 530) (2006). Under the "required evidence" test adopted in Drinkard, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 215. In this case, Mohamud was indicted for the aggravated assault of Perkins by pointing a handgun at him and the malice murder of Perkins by immediately shooting him a single time with that same

---

[2] We note that one commentator has suggested the possibility of an exception to this rule which would "allow specific acts of evidence of a victim's violent disposition of which the defendant had personal knowledge to show the defendant's state of mind." Jack Goger, Daniel's Georgia Handbook on Criminal Evidence § 4:42 (2014 ed.). That issue, however, is not presently before us, and we do not reach it.

9

handgun. Under these facts, the aggravated assault was wholly included in the act of malice murder, and, as the State concedes, should have been merged with the conviction for malice murder for purposes of sentencing. As a result, Mohamud's sentence for aggravated assault must be vacated.

Judgment affirmed in part and vacated in part. All the Justices concur.

Decided June 15, 2015 – Reconsideration denied July 13, 2015.

Murder. Gwinnett Superior Court. Before Judge Lewis, pro hac vice.

The Steel Law Firm, Brian Steel, for appellant.

Daniel J. Porter, District Attorney, Christopher M. Quinn, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christian A. Fuller, Assistant Attorney General, for appellee.