In the Supreme Court of Georgia

Decided: November 2, 2015

S15A1169.  HENDRIX v. THE STATE.

HUNSTEIN, Justice.

Appellant Sylvester Hendrix was convicted of murder and related offenses in connection with the October 6, 2011 shooting death of Dujon Parker. Hendrix appeals his convictions and sentences, contending that his trial counsel rendered constitutionally ineffective assistance and alleging trial court error and juror irregularities.  Though we find no merit in Hendrix's enumerations, we do find error in certain aspects of Hendrix's sentences, and we must, therefore, vacate and remand for resentencing.[1]

---

[1]Hendrix was indicted by a DeKalb County grand jury during the January 2012 Term on one count each of malice murder, felony murder, aggravated assault, possession of a firearm during commission of a felony, and possession of a firearm by a convicted felon.  At the conclusion of a jury trial held June 3-7, 2013, Hendrix was convicted on all counts.  The trial court sentenced Hendrix to life imprisonment without the possibility of parole for the malice murder; imposed concurrent life-without-parole sentences for felony murder and for aggravated assault; imposed a consecutive five-year term for possession of a firearm during commission of a felony; and merged the felon-in-possession count into the felony murder count, for an aggregate sentence of life without parole plus five years.  Hendrix thereafter filed a timely motion for new trial, which he amended, through new counsel, on August 5, 2014, August 15, 2014, and October 10, 2014.  Following a hearing, the trial court

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. On October 6, 2011, Hendrix took his car to a DeKalb County car wash, where victim Dujon Parker and several other men had congregated. In the course of washing Hendrix's car, Charles Porter, a car wash employee, accidentally locked the keys inside the car. Angered, Hendrix yelled and cursed at Porter. Parker, who witnessed this altercation, asked Porter whether he was okay, and Hendrix then began arguing with Parker. In the meantime, Hendrix's car was unlocked; as he prepared to drive away, Hendrix said to Parker, "I got something for you." After Hendrix left, several of the men at the car wash urged Parker to leave, but he refused, maintaining he had done nothing wrong.

A short time later, Hendrix returned to the car wash and exited his car with a gun. As Hendrix approached Parker, Parker grabbed for the gun, and a struggle ensued. During the struggle, Parker was shot twice, first in the leg, then in the chest. Hendrix got back into his car and drove away. The gunshot to Parker's chest proved fatal.

denied the motion on December 12, 2014. Hendrix filed a notice of appeal on December 24, 2014. The appeal was thereafter docketed to the April 2015 term of this Court and orally argued on July 13, 2015.

After the shooting, which had taken place in broad daylight, four eyewitnesses identified Hendrix from a photographic lineup as the perpetrator. Three of these witnesses had been acquainted with Hendrix prior to the shooting. Three of the four testified affirmatively that Parker was unarmed at the time of the shooting. Two of these witnesses also reported to a detective on the case that they had received a phone call from Hendrix on the night of the shooting, during which Hendrix issued threats and offered money to discourage their cooperation with police. One of these witnesses reported receiving a second, similar phone call from Hendrix a few days thereafter.

1. Though Hendrix has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Hendrix was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hendrix contends that his trial counsel rendered constitutionally ineffective assistance in several respects. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that but for such deficient performance there is a

reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) Hendrix first contends that counsel rendered ineffective assistance by opting at trial to pursue a misidentification defense rather than asserting a self-defense claim. Hendrix maintains that, from the outset, he admitted to trial counsel that he had shot Parker but claimed that it was Parker who had produced

the gun, escalating the altercation and necessitating Hendrix's actions. Counsel's decision to pursue a misidentification defense was unreasonable, Hendrix contends, given the number of eyewitnesses that identified Hendrix as the shooter and the fact that most of these witnesses were previously acquainted with Hendrix. In addition, Hendrix asserts, in forgoing the self-defense claim, counsel forfeited the opportunity to present evidence regarding Parker's prior threats of gun violence against Hendrix and others.[2] Hendrix contends he was prejudiced by this decision not only because it relied on a less viable defense but also because he rejected the State's plea offer in reliance on the perceived strength of his self-defense claim.

At the new trial hearing, trial counsel, a well-regarded veteran criminal defense attorney, testified that he had in fact investigated and prepared a self-defense strategy based on Hendrix's representations about the shooting.

---

[2]Though Hendrix cites Chandler v. State, 261 Ga. 402 (3) (b), (c) (405 SE2d 669) (1991) as authority for offering evidence of a victim's prior acts of violence in support of a self-defense claim, Hendrix fails to acknowledge that Chandler is no longer viable under Georgia's new evidence code, see Mohamud v. State, 297 Ga. 532 (3) (773 SE2d 755) (2015). As Hendrix was tried after the January 1, 2013 effective date of the new evidence code, it is unclear whether such evidence would have been admissible in any event. See OCGA § 24-4-405 (providing that, where character evidence is admissible, it is generally limited to that regarding reputation or opinion rather than specific instances of conduct); Mohamud, 297 Ga. at __ & n.2.

However, according to counsel, he ultimately opted at trial to pursue a misidentification strategy, which aimed to establish an unsubstantiated "rush to judgment" against Hendrix, by highlighting inconsistencies in witnesses' testimony, witness credibility issues, shoddy investigative methods, and a lack of corroborating evidence.

"An attorney's decision about which defense to present is a question of trial strategy." Washington v. State, 276 Ga. 655, 659 (3) (b) (581 SE2d 518) (2003). Unless the choice of strategy is objectively unreasonable, such that no competent trial counsel would have pursued such a course, we will not second-guess counsel's decisions in this regard. Boyd v. State, 275 Ga. 772, 776 (3) (573 SE2d 52) (2002) (in assessing whether counsel's performance was reasonable, "'[w]e ask only whether some reasonable trial lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial'"). An attorney's decision to pursue a particular defense is generally reasonable if it is supported by evidence in the case. McLean v. State, 297 Ga. 81 (3) (772 SE2d 685) (2015).

Our review of the evidence and the manner in which trial counsel presented the defense case amply supports our conclusion that counsel's

6

strategy, though ultimately unsuccessful, was nonetheless objectively reasonable. Though Hendrix highlights the pitfalls of the misidentification defense, he ignores the similar problems he would have faced in asserting self-defense, namely, the undisputed testimony of four eyewitnesses that Hendrix left the car wash after the initial altercation and returned shortly thereafter with a gun, and the similarly undisputed testimony that Parker did not have a gun in his possession at the car wash that day. Trial counsel here was compelled to choose between two problematic defenses, both of which relied in large part on attacking the witnesses' credibility. Under these circumstances, counsel's election to pursue misidentification over self-defense did not constitute deficient performance. Similarly, because a claim of self-defense was unlikely to have succeeded in the face of the unequivocal testimony of four eyewitnesses that Hendrix was the aggressor, we can assign no prejudice to counsel's decision to pursue the course he did.

In addition to faulting counsel's choice of trial strategy, Hendrix also assails counsel for failing to consult with him regarding this choice. At the new trial hearing, Hendrix testified that he had never denied being the person who had the altercation with Parker but at all times maintained that it was Parker who

7

produced the gun. Hendrix testified further that he was never made aware of the possibility that counsel might not pursue a self-defense claim at trial and that, when Hendrix inquired about the absence of a self-defense claim, counsel essentially told Hendrix to trust his judgment. For his part, trial counsel conceded that he did not consult with Hendrix regarding this change in strategy prior to introducing the defense theory during opening statements. Thus, it is apparently undisputed that counsel did not consult with Hendrix prior to making this strategic decision and proceeding with it at trial.

Though the judgment of trial counsel with regard to trial strategy is entitled to considerable deference in our assessment of ineffective assistance claims, we also note that attorneys do have an affirmative duty to consult with their clients on such matters. See Reid v. State, 235 Ga. 378, 379 (1) (219 SE2d 740) (1975) (citing ABA Standards Relating to the Administration of Criminal Justice for principle that decisions regarding trial tactics and strategy are "'the exclusive province of the lawyer *after consultation with his client*'" (emphasis added)); see also Florida v. Nixon, 543 U. S. 175, 187 (II) (125 SCt 551, 160 LE2d 565) (2004) (noting that trial counsel has a duty to consult with his client

regarding "questions of overall defense strategy").[3] However, as we have previously held, an attorney's failure to fulfill the duty to consult regarding trial strategy does not in and of itself constitute ineffective assistance. See Van Alstine v. State, 263 Ga. 1, 4 (426 SE2d 360) (1993). Rather, as with all ineffectiveness claims, we must assess the consequences of counsel's alleged deficiencies. Id. In the context of a failure-to-consult claim such as that alleged here, the defendant must establish that his counsel's failure to consult was prejudicial to his defense, i.e., "that there is a reasonable probability that, but for counsel's [failure to consult], the result of [his trial] would have been different." Strickland, 466 U. S. at 694. To demonstrate such prejudice here, Hendrix would have to establish a reasonable probability that, had counsel consulted with him, counsel would have opted to pursue a self-defense strategy at trial and that such a strategy would in reasonable probability have resulted in a different outcome. In light of the unequivocal testimony of all four eyewitnesses describing Hendrix as the aggressor, there is no reasonable probability that, even

_____

[3]As the Supreme Court made clear in Nixon, however, trial counsel is not obligated to obtain client *consent* as to decisions regarding trial strategy. Nixon, 543 U. S. at 187 (noting that client consent is required only as to decisions regarding whether to plead guilty, whether to waive a jury trial, whether to waive the right to testify, and whether to pursue an appeal).

if counsel had consulted with Hendrix and consequently decided to assert self-defense rather than misidentification, the jury's verdict would have been different. Thus, counsel's failure to consult did not constitute ineffective assistance, and this enumeration must fail.

(b) Hendrix next contends that trial counsel rendered ineffective assistance by failing to ensure that the trial court asked all three statutory voir dire questions required under OCGA § 15-12-164 (a).[4] The trial transcript confirms that the court asked only the first of these required questions and that trial counsel did not object to the court's omission of the other two. The transcript

---

[4]OCGA § 15-12-164 (a) requires that jurors on voir dire in a felony trial be asked the following:

> (1) "Have you, for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused?" If the juror answers in the negative, the question in paragraph (2) of this subsection shall be propounded to him;
> (2) "Have you any prejudice or bias resting on your mind either for or against the accused?" If the juror answers in the negative, the question in paragraph (3) of this subsection shall be propounded to him;
> (3) "Is your mind perfectly impartial between the state and the accused?" If the juror answers this question in the affirmative, he shall be adjudged and held to be a competent juror in all cases where the authorized penalty for the offense does not involve the life of the accused[.]

10

also reflects, however, that trial counsel's own questions to the jury venire adequately covered the principles that the two omitted questions were intended to address.[5]  Accordingly, Hendrix can establish no prejudice from trial counsel's failure to object to the trial court's omission of the latter two statutory voir dire questions.[6]

(c) Hendrix next contends that trial counsel was ineffective for failing to object when the prosecutor adduced testimony from Atlanta Police Detective Kevin Leonpacher regarding reports by two of the four eyewitnesses – Samuel

---

[5]Specifically, trial counsel asked the following questions: (1) "Based solely on th[e] allegation [that Hendrix shot and killed the victim], not knowing anything else about this case, is there anyone here for any reason who believes that they cannot be a fair and impartial juror in this case?"; (2) "Is there anyone here who believes they cannot keep an open mind until the end of trial?"; (3) "Is there anyone who believes they could not be a fair and impartial juror in this case?"; and (4) "Is there anyone here [who] for whatever reason has already formed an opinion that they don't like Mr. Hendrix?"

[6]Though Hendrix contends that his counsel's post-trial investigation has uncovered a member of the venire who would have answered one of the omitted questions in the affirmative, we are unmoved by this post-hoc assertion.  Having found that the substance of the omitted statutory questions was sufficiently addressed through the voir dire conducted by trial counsel, we find it unlikely that a prospective juror could truthfully answer all of trial counsel's questions in the negative and yet answer affirmatively were the questions framed in the marginally different language utilized in the statute.  Accordingly, we decline Hendrix's invitation to remand this case for further development of the record on this issue; Hendrix's motion to remand is hereby denied.

11

Heard and Ferrard Sanford – that Hendrix had contacted them in the aftermath of the shooting in an effort to deter their cooperation with the homicide investigation. As the record reflects, however, Detective Leonpacher's testimony was adduced only after Heard and Sanford, on direct examination by the prosecutor, both denied having been contacted by Hendrix and having reported such contacts to the police. Detective Leonpacher's testimony regarding Heard and Sanford's reports was admissible as evidence of prior inconsistent statements by these witnesses. See OCGA § 24-6-613 (b) (permitting admission of extrinsic evidence of witness' prior inconsistent statement where witness has first been afforded opportunity to explain or deny such statement and opposing party has had opportunity to examine witness regarding same); see also Paul S. Milich, Ga. Rules of Evidence, § 14:3, p. 430 (2014-2015 ed.) (foundation for prior inconsistent statement "typically is accomplished by confronting the witness with the substance of the prior statement and asking the witness if he made such a statement"). Insofar as the State properly laid the foundation for the detective's testimony regarding these witnesses' prior inconsistent statements, trial counsel had no grounds for challenging this testimony and cannot be adjudged ineffective for failing to

object to it. See Wesley, 286 Ga. at 356 (failure to make meritless objection cannot constitute deficient performance).

(d) Hendrix similarly asserts that trial counsel was ineffective for failing to object to the prosecutor's comments during closing argument regarding witness intimidation. Specifically, the prosecutor highlighted the evidence of Hendrix's post-shooting phone calls to Heard and Sanford; the obvious reluctance of another witness – who was ultimately declared hostile – to testify against Hendrix; and the visible increase in spectators "on the defendant's side of the ledger" during the testimony of the eyewitnesses. As the prosecutor's characterization drew on reasonable inferences from admissible evidence and the trial proceedings, it was within the wide realm of acceptable closing argument. See McClain v. State, 267 Ga. 378, 384 (3) (b) (1) (477 SE2d 814) (1996) ("the prosecutor has wide latitude to argue inferences from the evidence"). Counsel's failure to object, therefore, did not constitute ineffective assistance. See Wesley, 286 Ga. at 356.

3. In his final enumeration, Hendrix contends that the trial court erred by failing to strike for cause a venire juror who expressed doubt about whether she could be fair and impartial. The record reflects that this venirewoman did

initially equivocate regarding her ability to be fair and impartial but ultimately indicated that she believed she could listen to all of the evidence and determine Hendrix's guilt or innocence on that basis.

Trial courts are required to excuse for cause any juror deemed to be "substantially impaired in [his or her] ability to be fair and impartial." OCGA § 15-12-164 (d). Such impairment will be found only where it is shown that the juror

> holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will not be able to set it aside and decide the case on the evidence or the court's charge on the evidence.

Poole v. State, 291 Ga. 848, 852 (3) (734 SE2d 1) (2012). Given this juror's affirmation that she could decide the case based on the evidence, the trial court did not abuse its discretion in declining to excuse her for cause. See id. at 851 ("[w]hether to strike a juror for cause lies within the sound discretion of the trial judge").

4. While the evidence was sufficient to sustain Hendrix's convictions and we find no merit to Hendrix's enumerations of error, we do find error in Hendrix's sentences. First, while the jury was authorized to find Hendrix guilty

14

of both malice and felony murder, because there was but a single victim, he cannot be convicted and sentenced on both counts, and the felony murder count must be vacated as mere surplusage.  See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993).  Because the felony murder count should have been vacated, it was error for the trial court to merge the felon-in-possession count with the felony murder count, and Hendrix is subject to be sentenced on the felon-in-possession count.  In addition, because the aggravated assault was based on the same act as the malice murder, the aggravated assault was a lesser included offense that should have been merged into the malice murder.  See, e.g., Dyal v. State, 297 Ga. 184 (1) (773 SE2d 249) (2015).[7]  Accordingly, on remand, the trial court must vacate the convictions and sentences for felony murder and aggravated assault and impose a proper sentence on the felon-in-possession count.

Judgment affirmed in part and vacated in part, and case remanded.  All the Justices concur.

---

[7]We note that there is no evidence of any "deliberate interval" between the two gunshots, such as might support separate convictions and sentences for aggravated assault and murder.  See generally Reddings v. State, 292 Ga. 364 (2) (738 SE2d 49) (2013).