## S16A1071. CAPPS v. THE STATE.
### (792 SE2d 665)

HINES, Presiding Justice.

Following the denial of his motion for new trial, as amended, William Kenneth Capps appeals his conviction and sentence for malice murder in connection with the fatal shooting of Ernest Morocco "Rocco" Lattimore. He challenges the effectiveness of his trial counsel and the trial court's alleged refusal to allow him to inquire into whether there was an improper communication to the jury. For the reasons that follow, the challenges are without merit and we affirm.[1]

The evidence construed in favor of the verdict showed the following. On the evening of July 10, 2005, Capps arrived, unannounced, at the home of his employee Dennis McMillan, stating that he needed

---

[1] The fatal shooting occurred on July 10, 2005. On August 2, 2005, a Ware County grand jury returned an indictment against Capps charging him with malice murder, felony murder while in the commission of aggravated assault, possession of a firearm by a convicted felon, and use of a firearm by a convicted felon. A judgment of nolle prosequi was entered on the two firearms charges on August 15, 2006. Capps was tried before a jury October 23-25, 2006, and found guilty of malice murder. By judgment signed October 25, 2006, and filed November 8, 2006, he was sentenced to life in prison. Trial counsel filed a motion for new trial on Capps's behalf on November 21, 2006, and an amended motion for new trial was filed by new counsel on March 11, 2013. The motion for new trial, as amended, was denied on May 28, 2015. A notice of appeal was filed on June 23, 2015, and the case was docketed to this Court's April 2016 term. The appeal was submitted for decision on the briefs.

McMillan's help to complete a roofing job before a predicted hurricane. Capps was very nervous and agitated, and appeared to be "high on something." McMillan left with Capps, driving Capps's truck because Capps had been, and was still, drinking alcohol. After briefly stopping at Capps's shop, Capps directed McMillan to drive to a home on Highsmith Street in Waycross "to go see a man about going to work with [them]." Lattimore was sitting on the front porch when they arrived.

Capps exited the truck and approached Lattimore, asking Lattimore for a "20," meaning that Capps wanted to buy drugs. Capps and Lattimore conducted a hand-to-hand exchange of drugs for money, and when Lattimore bent down to put the money in his pocket, Capps drew a handgun from the back of his waistband and shot Lattimore. Lattimore jumped off the side of the porch and Capps ran to its edge, still wielding the handgun and looking for Lattimore. Lattimore went a short distance before collapsing in a neighbor's yard where he later died; he had sustained a fatal gunshot wound to the chest. McMillan, who had stayed in the truck, saw the shooting and "took off" in the truck. As McMillan was driving away, Capps ran after him, "hollered something," pointed his handgun at him and fired. Capps then fled the scene on foot. A man inside the residence where Lattimore was shot ran outside after hearing the gunshot and saw Capps running from the scene; Capps was still grasping the handgun.

McMillan drove to his niece's home and told her "my boss man just shot a guy." They called 911, and after police arrived, they looked at the truck and found indentations on its rear where bullets had hit. The police found cash and crack cocaine on Lattimore's body as well as crack cocaine along the route Lattimore traveled before he collapsed. The police found Capps hiding in the shower in the home he shared with his girlfriend; there he unsuccessfully attempted to escape. Later that night, the cocked .38 caliber revolver used to kill Lattimore was found in the shower.

1. Capps does not contest the legal sufficiency of the evidence of his guilt. Nevertheless, in accordance with this Court's general practice in appeals of murder cases, this Court has reviewed the record and concludes that the evidence at trial was sufficient to enable a rational trier of fact to find Capps guilty beyond a reasonable doubt of the malice murder of Lattimore. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Capps contends that his trial counsel rendered ineffective assistance in several respects. However, in order

> [t]o establish ineffective assistance of counsel, a defendant must show that his counsel's performance was profession- ally deficient and that but for such deficient performance

there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 64) (1984). To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other.

*Hendrix v. State*, 298 Ga. 60, 61-62 (2) (779 SE2d 322) (2015) (citations and punctuation omitted).

(a) Capps claims that his trial counsel was ineffective for not objecting to, and thereby attempting to exclude, testimony from McMillan, which he characterizes as inadmissible "testimony of a similar transaction involving an unrelated murder."[2] The testimony at issue was McMillan's recounting of Capps's talking to him about Capps's family's history of killing African-Americans (Lattimore was African-American) and that Capps, who is Caucasian, had himself killed an African-American and was ready to kill again.[3]

---

[2] The morning following this testimony, defense counsel moved for a mistrial based on the testimony, arguing that it put Capps's character in issue. The trial court denied the motion and later explained in its ruling denying Capps a new trial that the evidence was relevant to establish Capps's motive in shooting Lattimore.

[3] The testimony at issue is:

STATE: Has Kenny Capps ever given you any reason as to why he would shoot somebody like that?
MCMILLAN: He always talked about killing a black man.
STATE: All right. Did he use the term "black man"?
MCMILLAN: No. He used the word "n*****."
STATE: All right. And what did he tell you about that?
MCMILLAN: He told me that his father killed – his grandfather killed the first n*****. He killed the second – his daddy killed the second n*****. His brother killed the third n*****. He killed one and he was ready to kill another one, but I always thought he was just talking.

Shortly thereafter on cross-examination, defense counsel asked McMillan, "So his motive in your mind for shooting this gentleman was just because he wanted to shoot somebody?" McMillan replied, "[t]hat's what I'm figuring," and "[t]hat's what [Capps] always said."

In the trial of an individual charged with murder, evidence of motive for the homicide is relevant and, therefore, admissible. *Lindsey v. State*, 282 Ga. 447, 451 (3) (651 SE2d 66) (2007). This is so even if the evidence incidentally places the defendant's character in evidence. *Fulton v. State*, 278 Ga. 58, 60 (3) (597 SE2d 396) (2004). It is plain that the complained-of evidence was not admitted as proof that Capps had committed a prior murder, subject to the substantive and procedural requirements of admission of such evidence, but rather was properly admitted as evidence of Capps's racial animus toward African-Americans as a possible motive for his killing of the African-American victim in this case. See *Goodman v. State*, 293 Ga. 80, 83-84 (3) (742 SE2d 719) (2013). Trial counsel's failure to make a meritless objection is not evidence of ineffective assistance. *Porter v. State*, 292 Ga. 292, 294 (3) (a) (736 SE2d 409) (2013).

(b) Capps next contends that trial counsel was ineffective for not attempting to exclude what he terms "improper character evidence of [Capps's] alleged racist beliefs."[4] At issue is the testimony of a detective about remarks Capps made to him about an African-American detective investigating the case.[5]

As we have noted, relevant and material evidence in a case is not rendered inadmissible merely because it incidentally places the defendant's character in issue. See Division 2 (a), supra. And as Capps acknowledges in argument, a defendant's belief in ideologies is admissible in evidence if it is directly relevant to an issue in the case such as motive. *Boring v. State*, 289 Ga. 429, 433 (2) (711 SE2d 634) (2011). Evidence of Capps's racist comments, and therefore apparent beliefs, was plainly relevant to establishing a possible motive for the seemingly unprovoked killing. See Division 2 (a), supra. Thus, trial counsel's failure to object cannot support Capps's claim of trial counsel's ineffectiveness. *Porter v. State*, supra at 294 (3) (a).

---

[4] Trial counsel did not object to the testimony at the time it was given, but attempted on cross-examination of the detective to portray Capps's comments as merely expressing Capps's anger and frustration over money lost as a result of his incarceration.

[5] The detective testified to this exchange with Capps in a medical center conference room after Detective Hill, an African-American, left the room:

> Mr. Capps was talking to me, general discussion. And he kept saying that he thought Detective Hill was taking the case personally. He was being overzealous about his job. I tried to explain to him he had a job to do and he was very proficient in doing his job. And then he made a comment to me, quote, "I ain't going to let no blue gum n***** take nothing from me." And I asked him what he was talking about and he sort of indicated he was talking about Detective Hill. A moment later Detective Hill came in the room and he stopped talking about anything. After blood was drawn, Detective Hill went to have the tubes sealed up and then it was just general conversation after that point.

(c) Capps further argues that trial counsel was ineffective for failing to object to comments in the State's closing argument about the aforementioned evidence of Capps's racism as "improper reference to inadmissible evidence of a similar transaction and character evidence."[6] However, as has been determined, the subject testimony was properly admitted as evidence of motive. See Divisions 2 (a) and (b), supra. And, inasmuch as the State's argument was based upon admissible evidence, it was within the wide latitude of acceptable closing argument. *Hendrix v. State*, 298 Ga. 60, 66 (2) (d) (779 SE2d 322) (2015). Consequently, trial counsel's failure to object did not constitute ineffective assistance. Id.

(d) Capps next claims that trial counsel was ineffective for "not fully cross-examining" the medical examiner about metal fragments found in Lattimore's chest, specifically in not asking the medical examiner about his report indicating found "fragments of a copper jacket" in light of testimony by the firearms examiner that the bullet recovered from Lattimore's body was lead-based and fired from the weapon recovered from Capps's home. He further complains that trial counsel did not ask the firearms examiner "whether his use of lead wad cutters to compare against a copper jacketed bullet would undermine the reliability of his comparison."

Implicit in Capps's argument is that there was a discrepancy between the testimony of the two experts in regard to the identity or nature of the fatal projectile. But, there was no such conflict or inconsistency, much less any that was to the benefit of the defense. As Capps admits in argument, the medical examiner testified that the "small metal flakes" found near the entry wound were "independent of" the larger lead projectile found deeper in the victim's body. What is more, the evidence was that the recovered metal fragments were pieces of a necklace, ostensibly worn by the victim at the time he was

---

[6] Capps cites the comments:

Racial hatred is what this is about and drugs. Kenny Capps went over to Rocco Lattimore's house to get cocaine. Something set him off, due to the level of intoxication or whatever was said or done between the two of them, but something – racial hatred and intoxication led to the death of Rocco Lattimore. You heard Dennis McMillan make the statement as to what the defendant told him, that his grandfather had killed one, his father had killed one, he had killed one, it was time to kill another. And that's corroborated by the statement that Kenny Capps told to [Detective] Boyett two days later. When Detective Hill, who for some reason he took a dislike to, was trying to get a blood sample from him and he said that he wasn't going to let a blue gum "N" word take anything from him.

The State further remarked:

But regardless of whether Rocco was a crack dealer or not a crack dealer, he did not cause his own death. It's not his fault that Kenny hated blacks, that Kenny was intoxicated and was easily set off.

shot. Thus, the failure to further question the cited experts in this regard provides no basis for ineffectiveness of counsel.

(e) Capps lastly contends that trial counsel was ineffective for "allowing the [trial] court to improperly remove a juror over [his] objection."

After the jury was selected but before it was seated, the State objected to Capps's peremptory strikes, calling its objection a "*Batson* motion"[7] and arguing that the strikes were used in a racially-discriminatory manner, i.e., that six of Capps's nine strikes were used to remove African-Americans from the jury. In defending his strike of "Juror No. 3," an African-American man, defense counsel stated:

> He does home maintenance and the issue — the construction issue was — you know, he's self-employed and there is going to be some employer/employee — I'm not going into depth about it — conflict as to how hard it is to get employees, if my client does take the stand, and that the problem of being a bigger company and a smaller company and that's the reason that we did that.

The trial court found that the defense did not give a race-neutral reason for striking Juror No. 3 and put him, along with another individual, back on the jury.[8] The defense agreed to "go with" Juror No. 3. However, at the close of the evidence, the trial court removed Juror No. 3 and replaced him with an alternate, stating:

> Let me put on the record that in the selection of the jury, there was a *Batson* challenge made by the State. And we went in the back, outside of the presence of the jury, to discuss the matters and that's on the record as to what took place back there. I'm not going to put on the record now what transpired in the back. However, after placing or stating that two of the jurors were removed for an improper purpose, we ended up with [Juror No. 3] and juror number 32 being placed on the jury. I was concerned about [Juror No. 3] as to how he got placed on and I have removed him from the jury.

---

[7] The motion was actually one pursuant to *Georgia v. McCollum*, 505 U. S. 42 (112 SCt 2348, 120 LE2d 33) (1992), in which the analysis of *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), was extended to the peremptory challenges of criminal defendants.

[8] Later in colloquy regarding Juror No. 3, both Capps and defense counsel stated that the juror was struck because the juror said he knew Lattimore or Lattimore's father, but after such reason was disputed by the State, defense counsel stated that they were thinking of a different prospective juror.

Defense counsel objected to this ruling, and as a result of the objection, the trial court attempted to find Juror No. 3 to further develop the record; however, defense counsel then agreed to use the alternate, who was placed on the jury.

As Capps acknowledges, the trial court has the discretion to discharge a juror and replace the juror with an alternate at any time so long as the trial court has a sound legal basis to do so. OCGA § 15-12-172;[9] *Brooks v. State*, 281 Ga. 14, 18 (3) (635 SE2d 723) (2006). Yet, he urges that the trial court did not have a "legally relevant reason" to dismiss Juror No. 3, and therefore, trial counsel's waiver of his objection prevented Capps from being tried by his chosen jury, and thereby prejudiced him. However, on its face the defense's initially-voiced reason for striking Juror No. 3, i.e., the nature of the juror's employment and thereby possible implicit bias against an employer like Capps, is race neutral, and the trial court made no finding that it was pretextual. See *Stokes v. State*, 281 Ga. 825, 829 (3) (642 SE2d 82) (2007). Under such circumstance, the trial court had a sound basis for eventually dismissing Juror No. 3, and not having Juror No. 3 serve on the jury was precisely what the defense wanted from the beginning. Furthermore, trial counsel's testimony at the motion for new trial hearing, which occurred approximately six-and-a-half years after Capps's trial, revealed that trial counsel had difficulty remembering specifics of the trial, including those surrounding the removal of Juror No. 3; it was only after much prodding on direct by Capps's new counsel that trial counsel speculated, in hindsight, that he had intended to object to removal of the juror and so it would have been a mistake not to do so. Indeed, on cross-examination, trial counsel admitted that he did not remember the circumstances of the removal of Juror No. 3. Hindsight has no place in an assessment of the effectiveness of trial counsel. *Mohamud v. State*, 297 Ga. 532, 533 (2) (a) (773 SE2d 755) (2015). Nor will speculation support a claim of ineffective assistance of counsel. *Robinson v. State*, 299 Ga. 648 (791 SE2d 13) (2016). What is more, juror selection is a matter of trial

---

[9] OCGA § 15-12-172 provides:

If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. Further replacements shall be made in similar numerical sequence provided the alternate jurors have not been discharged. An alternate juror taking the place of any incapacitated juror shall thereafter be deemed to be a member of the jury of 12 and shall have full power to take part in the deliberations of the jury and the finding of the verdict. Any verdict found by any jury having thereon alternate jurors shall have the same force, effect, and validity as if found by the original jury of 12.

tactics and strategy. *Lockhart v. State*, 298 Ga. 384, 386 (2) (782 SE2d 245) (2016). And, as we have observed, a decision implicating trial tactics and strategy can serve as the basis for an ineffectiveness claim only if it is so patently unreasonable that no competent attorney would have made such a decision. *Hendrix v. State*, supra at 61-62 (2). And most significantly in this case, at the post-trial hearing trial counsel was never asked why he ultimately acquiesced to the dismissal of Juror No. 3. Consequently, trial counsel cannot be found to have performed deficiently by such acquiescence. *Brooks v. State*, supra at 18 (3).

3. Capps also contends that the trial court abused its discretion in preventing him from inquiring as to whether there was an improper non-verbal communication to the jury. The complained-of conduct was allegedly a deputy sheriff in the courtroom seen "tying a noose." But the record reveals that after the trial court stated that it had inquired into the matter and that the deputy sheriff had denied such conduct, the defense did not insist on exploring the matter further. Indeed, defense counsel asked the trial court to either "call [the deputy sheriff] up" or simply "put that on the record." And, when the trial court opted not to "call anybody up," defense counsel said that was "all right" and merely questioned whether the incident was "on the record," which the court reporter indicated was the case. Thus, it can hardly be said that the trial court abused its discretion when it granted the alternative relief requested by the defense. See *Lyon v. State*, 262 Ga. 247, 248-249 (3) (a) (416 SE2d 523) (1992); *Smith v. State*, 294 Ga. App. 692, 701 (8) (670 SE2d 191) (2008).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 31, 2016.

*Timothy C. Head, Jr.*, for appellant.

*George E. Barnhill, District Attorney, Michelle C. McIntire, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General*, for appellee.