302 Ga. 166
FINAL COPY

S17A0984. HAMPTON v. THE STATE.

HINES, Chief Justice.

Appellant Dennis Hampton was found guilty of malice murder and other related crimes in connection with the shooting death of Takilam Terrell.[1]  On appeal, he contends, among other things, that the trial court gave an impermissibly coercive jury charge and erred in sentencing him to life in prison without the possibility of parole for malice murder.  We see no reversible error

---

[1] The crimes occurred on April 7, 2013.  On June 27, 2013, a Cobb County grand jury indicted appellant Dennis Hampton, along with his first cousin, Ricky Hampton, and Ricky's wife, Trina Chatman, for malice murder; felony murder based on the aggravated assault of the victim with a deadly weapon; aggravated assault with a deadly weapon; and aggravated assault with a bottle. Appellant was also indicted for two weapon possession offenses and felony murder based on weapon possession.  On March 16, 2015, pursuant to a consent order, the trials of appellant's cousin and Chatman were severed from that of appellant in exchange for the cousin's and Chatman's agreement to testify at appellant's trial. On March 23, 2015, the jury found appellant guilty on all counts except the count for the aggravated assault of the victim with a bottle.  On May 7, 2015, the trial court sentenced appellant to life in prison without parole for malice murder and to a term of years on a weapon possession offense.  The felony murder convictions were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 372 (434 SE2d 479) (1993), and the trial court merged the remaining counts.  On May 7, appellant filed a motion for new trial, which he amended on November 3, 2015. The trial court denied the motion for new trial, as amended, on December 23, 2015.  Appellant filed a notice of appeal on January 12, 2016, and the case was docketed in this Court for the April 2017 term and submitted for decision on the briefs.

and affirm.

1. Viewing the evidence in the light most favorable to the verdicts, the evidence presented at trial showed that, in the early morning hours of April 7, 2013, the victim and his girlfriend, Golden Ananaba, went to Milo's Bar in Cobb County. Appellant, along with his first cousin, Ricky Hampton, and Ricky's wife, Trina Chatman, were also there. When the victim and his girlfriend arrived, they ordered drinks at the bar, as well as food to go. While at the bar, the victim accidentally bumped into Chatman. Appellant saw this happen, and he and the victim exchanged "heated words." About 15 minutes later, as the victim and his girlfriend were preparing to leave, they had an argument that led to the victim grabbing his girlfriend. Samuel Adams, a security guard, and appellant, who sometimes worked as a security guard at the bar but was a patron that night, intervened in an attempt to separate the victim and Ananaba. The victim pushed Adams and appellant, and at that point, Ricky Hampton came up and tackled the victim, knocking him to the floor. According to appellant's cousin and Chatman, as well as Adams and the owner of the bar, both of whom knew appellant well, appellant then pulled out a gun and fired one shot at the victim, which struck him in the chest and killed him.

2

Appellant does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. During its deliberations, the jury asked the trial court whether it "need[ed] to vote unanimous on guilty or not guilty on a specific charge?" After a discussion with the prosecutor and defense counsel, the trial court instructed the jury, "You must reach a verdict on each charge. And whatever your verdict is, it must be unanimous." Appellant contends that instructing the jury that it had to "reach a verdict on each charge" was impermissibly coercive.

Because appellant failed to object to the charge, we review the issue for plain error under OCGA § 17-8-58 (b). Plain error review involves four steps.

First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the

3

appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation, punctuation and emphasis omitted). "Satisfying all four prongs of this standard is difficult, as it should be." Id. (citation and punctuation omitted).

We conclude that, even assuming that the trial court clearly erred in telling the jury that it had to reach a verdict on each count and that appellant did not affirmatively waive this claim, appellant's claim regarding the charge fails the third step of the plain error analysis. To prevail on this step, appellant has the burden to "make an affirmative showing that the error probably did affect the outcome below." *Gates v. State*, 298 Ga. 324, 327 (781 SE2d 772) (2016) (citation and punctuation omitted). In this regard, if the jury question amounted to an announcement that the jury was deadlocked, appellant could perhaps carry his burden and prevail on this claim. See *Drayton v. State*, 297 Ga. 743, 748 (778 SE2d 179) (2015) (explaining that, in giving our modified *Allen* charge to a deadlocked jury, see *Allen v. United States*, 164 U. S. 492, 501 (17 SCt 154,

41 LE 528) (1896), "'a court should not instruct a jury that it is absolutely required to reach a verdict, [but] it is permissible to instruct a jury that any verdict that it does agree on must be unanimous'" (citation omitted)); *United States v. Jones*, 504 F3d 1218, 1219 (11th Cir. 2007) (holding that, when a jury informs the trial court that it is deadlocked, "[a]n instruction which appears to give a jury no choice but to return a verdict is impermissibly coercive" and constitutes reversible plain error); *Jenkins v. United States*, 380 U. S. 445, 446 (85 SCt 1059, 13 LE2d 957) (1965) (holding that instructing a deadlocked jury that, "[y]ou have got to reach a decision in this case," was coercive and constituted reversible error).

Here, however, the jury question can easily be read as asking whether a unanimous vote is required on a charge and not as saying that the jury was deadlocked on a specific charge. Courts have held that a jury that is not deadlocked is less susceptible to coercion than a deadlocked jury. See *Bradley v. United States*, 676 Fed. Appx. 895, 902 (11th Cir. 2017); *Cramer v. Fahner*, 683 F2d 1376, 1389 (7th Cir. 1982). In *Bradley*, the district court charged a non-deadlocked jury that it had to reach a verdict on each count of the indictment, and appellant contended that appellate counsel was ineffective in failing to argue

5

on appeal that the charge was coercive. The Eleventh Circuit held that appellant failed to carry his burden to show prejudice because there was ample evidence to support the convictions and because there was no indication that the jury was deadlocked and therefore more susceptible to a coercive charge. See *Bradley*, 676 Fed. Appx. at 902. Although *Bradley* involved the prejudice required to prove a claim of ineffective assistance of counsel, this Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim. See *Martin v. State*, 298 Ga. 259, 277-278 (779 SE2d 342) (2015).

Similarly, here, the evidence against appellant is strong, and the record does not reliably suggest that the jury was deadlocked. Under plain error review, appellant "bears the burden of persuasion with respect to prejudice," *United States v. Olano*, 507 U. S. 725, 734 (113 SCt 1770, 123 LE2d 508) (1993), and must affirmatively show that "the error probably did affect the outcome below," *Gates*, 298 Ga. at 327 (citation and punctuation omitted). "Such a showing demands some level of certainty and particularity." *United States v. Bramley*, 847 F3d 1, 7 (1ˢᵗ Cir. 2017). See also *Jones v. United States*, 527 U. S. 373, 394-395 (119 SCt 2090, 144 LE2d 370) (1999) ("Where the effect of an alleged

6

error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."). Because appellant has not reliably shown that the jury was deadlocked in this case and because the evidence against appellant is strong, with four people who know him well identifying him as the shooter, we conclude that he has failed to show the prejudice necessary to carry his burden on the third prong of the plain error test. See *Bramley*, 847 F3d at 7-8 (holding that, on plain error review, appellant had not shown prejudice from the alleged error of the sentencing court having off-the-record conversations with a probation officer because the record did not show whether the conversations were appropriate or inappropriate); *Jones*, 527 U. S. at 394-395 (on plain error review in a case in which a capital defendant claimed that jury instructions regarding a possible lesser sentence in the event the jury could not unanimously agree on life or death could have inclined a deadlocked jury toward death, the Supreme Court held that the petitioner could not show prejudice because the effect of the error was uncertain; "It is just as likely that the jurors, loathe to recommend a lesser sentence, would have compromised on a sentence of life imprisonment as on a death sentence.").

3. Appellant contends that the trial court erred in not continuing the case

after his trial counsel announced he was not ready on the first day of trial due to appellant's lack of cooperation and in denying the motion for continuance that trial counsel made later in the same day. These claims lack merit.

After the State announced that it was ready to proceed on the morning of trial, trial counsel said that "my announcement is the same as it was at the calendar call. I have to announce not ready due to my client not cooperating with me in preparing a defense." The trial court then said, "[w]e will go forward today with the jury trial." During jury selection later that same day, trial counsel moved for a continuance, saying that appellant had just told him of a potential witness of whom trial counsel was not previously aware. The trial court denied this motion.

Even treating trial counsel's announcement of not ready as a motion for a continuance, the trial court did not abuse its discretion in denying either that motion or the one trial counsel made later that day. "A refusal to grant a continuance will not be disturbed by appellate courts unless it clearly appears that the judge abused his discretion in this regard." *Lane v. State*, 299 Ga. 791, 794 (792 SE2d 378) (2016) (citation and punctuation omitted). Here, when trial counsel said that he was not ready to proceed with the trial, he had been

8

representing appellant for five months. He did not, however, offer any explanation as to the state of his preparation, simply stating the conclusion that he was not ready to proceed because appellant would not cooperate. Moreover, when trial counsel later moved for a continuance as a result of appellant informing him of the potential witness, he did not say what evidence this witness might offer, and the prosecutor stated to the court that trial counsel had told him that appellant would not share with trial counsel what knowledge the witness had about the case. Additionally, with regard to the potential new witness, the trial court told trial counsel that the court would "work with [him] in any way" it could during the trial "to help [him] secure that witness." Finally, there was also evidence that appellant not only failed to cooperate with trial counsel, but also failed to cooperate with his previous counsel, and we have held that a trial court does not abuse its discretion in denying a motion for a continuance when the motion is based on the ground that trial counsel did not have the benefit of the defendant's cooperation until shortly before trial. See *Rivers v. State*, 250 Ga. 303, 307 (298 SE2d 1) (1982) ("That [trial counsel] did not have the benefit of the defendant's cooperation until shortly before trial, is the defendant's own fault, about which he cannot now complain."). For all of these reasons, we

conclude that the trial court did not abuse its discretion in not continuing the case.

4. Appellant contends that trial counsel provided constitutionally ineffective assistance. We disagree.

To prevail on this claim, appellant must show both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one." *Wiggins v. State*, 295 Ga. 684, 686 (763 SE2d 484) (2014).

> To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Capps v. State*, 300 Ga. 6, 8 (792 SE2d 665) (2016) (citation and punctuation omitted). Furthermore,

10

there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U. S. at 697.

(a) Appellant first contends that trial counsel failed to adequately prepare a defense because he did not call two witnesses who would have testified that appellant was not involved in the shooting of the victim. Both of these witnesses gave testimony to that effect at the hearing on the motion for new trial. However, trial counsel testified at that hearing that he did not call these two witnesses at trial because appellant consistently maintained that he wanted to testify at his trial and because the testimony of the two witnesses would have been inconsistent with appellant's testimony.[2] "'A decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics.'" *Moss v. State*, 298 Ga. 613, 619 (783 SE2d 652) (2016) (citation omitted). Here, given trial

---

[2] After the State rested its case, appellant told the trial court that he had decided not to testify at his trial.

11

counsel's concern that the testimony of the two witnesses would have been inconsistent with what he expected appellant's testimony to be, we cannot say that the strategic decision not to call the witnesses was "'so patently unreasonable that no competent attorney would have followed such a course.'" *Capps*, 300 Ga. at 8 (citation omitted).

(b) Appellant contends that trial counsel was ineffective in failing to object when the trial court, in response to the jury's question, instructed the jury that it had to reach a verdict on each count of the indictment. However, for the same reasons that we concluded that appellant could not carry his burden to show prejudice on plain error review regarding this charge, we conclude that he cannot carry his burden to show prejudice on this ineffectiveness claim. See Division 2 above; *Martin*, 298 Ga. at 277-278 (equating the harm prongs of the standards for showing plain error and ineffective assistance of counsel).

5. At the sentencing hearing, the State argued that the trial court was required to sentence appellant to life without parole on the murder count because appellant had previously been convicted of a felony; because OCGA § 17-10-7 (a) says that, after having been convicted of a felony, a person who "commits a felony punishable by confinement in a penal institution shall be sentenced to

undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted"; and because, under OCGA § 16-5-1 (e) (1), "the longest period of time prescribed for the punishment" of appellant's "subsequent offense" of murder is life without parole. The trial court agreed with this argument and sentenced appellant to life without parole.

Appellant asserts that the trial court erred in interpreting these statutes to mandate a sentence of life without parole. We conclude, however, that even if the trial court erred, it was harmless. When imposing the sentence, the trial court said that it thought that life without parole was the statutorily mandated sentence, but that it would have exercised its discretion to impose that sentence in any event due to the fact that appellant was a two-time convicted felon who executed the victim and would not accept responsibility for his actions even though "there were eyewitnesses who have known him for years and pointed him out." See *Smith v. State*, 278 Ga. App. 858, 859 (630 SE2d 125) (2006) (explaining that a trial court's error in thinking that a certain sentence was statutorily mandated could have been harmless if "the trial judge [had] indicated that he would have" imposed the same sentence "regardless of what he believed the statute required").

Judgments affirmed.  All the Justices concur.

Decided October 2, 2017.

Murder. Cobb Superior Court. Before Judge Ingram.

Raina J. Nadler, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.