## S16A1070. BRADSHAW v. THE STATE.
(792 SE2d 672)

HUNSTEIN, Justice.

Appellant Roy Lee Bradshaw was tried and convicted of malice murder and related offenses in connection with the March 2008 beating death of Earl Gill. Bradshaw appeals,[1] alleging he received ineffective assistance of counsel and arguing that the trial court erred in admitting his custodial statements at trial. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial establishes as follows. Earl Gill befriended Bradshaw, his wife Teresa, and the Morrises, Bradshaw's co-defendants, while staying at an Econo Lodge in Milledgeville, Georgia. On March 15, 2008, Gill called his drug dealer, Michael Robbins, to arrange a drug buy for himself, Bradshaw, and the Morrises, funded by the group.

---

[1] A Putnam County grand jury jointly indicted Roy Lee Bradshaw, Mims Michael Morris, Sr., and Mims Michael Morris, Jr., for malice murder, felony murder predicated on aggravated assault, aggravated assault, kidnapping with bodily injury, and robbery. Following a joint trial conducted September 29 – October 2, 2009, a jury found Appellant guilty on all counts, except the kidnapping charge which was withdrawn by the State at the close of its case-in-chief. The trial court sentenced Appellant to life imprisonment without the possibility of parole for malice murder, 20 years consecutive for aggravated assault, and another 20 years consecutive for robbery; the felony murder count was vacated by operation of law. Appellant filed a motion for new trial in October 2009, which was later amended in March 2014. The trial court conducted a hearing on Appellant's amended motion on September 30, 2014, and denied the motion in an order filed on January 27, 2016. Bradshaw timely filed a notice of appeal, which was docketed to the April 2016 term of this Court, and the case was thereafter submitted for decision on the briefs.

Later that day, Gill drove with Robbins to a nearby Walmart to complete the drug transaction. Upon their arrival at the store, Gill gave Robbins the group's money. Robbins then entered the store under the pretense of completing the drug deal, but he never returned. After a fruitless search for Robbins, Gill walked back to the Econo Lodge and informed Bradshaw and the Morrises that Robbins had taken their money.

Believing that Gill was in on the theft, Bradshaw and the Morrises forced Gill into the back of Bradshaw's van and, with Teresa in the driver's seat,[2] the group proceeded to ride around town in search of the stolen money. During the search, the men periodically struck Gill and, with each unsuccessful stop, they grew angrier and more convinced that Gill had stolen their money.

Eventually, Bradshaw had Teresa pull to the side of the road after which he and the Morrises dragged Gill from the vehicle and beat him for an extended period of time, finally leaving the victim for dead. Somehow, Gill managed to regain consciousness and stumble to a nearby home. When the owners saw Gill's extensive injuries, they took him to the hospital where he died nine days later from severe blunt force injuries to his head.

At trial, the jury heard many witnesses testify as to the numerous post-incident inculpatory statements made by Bradshaw, his wife, and the Morrises concerning their participation in Gill's murder. Bradshaw also confessed to law enforcement that he and the Morrises beat the victim in the van and on the side of the road. Gill's blood was found inside Bradshaw's van, along with a bloody baseball bat and medium force velocity blood spatter, consistent with Gill being struck with a fist or bat.

1. Though Bradshaw has not enumerated the general grounds, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Bradshaw was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Bradshaw contends that the trial court erred when it found his custodial statements to be freely and voluntarily given. "The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances." (Citation omitted.) *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008). "Although we defer to the trial court's

---

[2] Teresa Bradshaw pled guilty to voluntary manslaughter and testified as a State's witness at trial.

findings of disputed facts, we review de novo the trial court's application of the law to the facts." *Clay v. State*, 290 Ga. 822, 822-823 (1) (725 SE2d 260) (2012). Additionally, we "will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous." *Wright v. State*, 285 Ga. 428, 432 (677 SE2d 82) (2009).

Bradshaw spoke with law enforcement twice in one day during their investigation into Gill's murder. In the first interview, Bradshaw was verbally read his *Miranda*[3] warnings and, after waiving his rights, denied any involvement in the murder, causing law enforcement to end the interview. Shortly thereafter, Bradshaw realized his wife was in custody, and he decided to give a second statement. This statement, which was played for the jury, included verbal *Miranda* warnings and Bradshaw's confession. After holding a *Jackson-Denno*[4] hearing, the trial court credited the testimony of the law enforcement officers who interviewed Bradshaw and found the statements to be freely and voluntarily given without hope of benefit or fear of injury.

Bradshaw claims that the trial court's finding was erroneous because his custodial statements were not freely and voluntarily given as he was not read his *Miranda* rights and because he was allegedly physically assaulted by police and coerced with threats against his wife Teresa. Regarding the issues of physical assault and threats by law enforcement, these issues were raised by Bradshaw for the first time in his motion for new trial, meaning that the trial court did not have the opportunity to hear or rule upon this evidence at trial. Where an appellant "raises an issue on appeal that was not presented or ruled upon by the trial court, his argument is not preserved for review by this Court." *McClendon v. State*, 299 Ga. 611, 616 (4) (A) (791 SE2d 69) (2016).

As to the remaining issues concerning whether Bradshaw was properly read his rights, we conclude that the record supports the trial court's findings that Bradshaw's statements were made freely and voluntarily. Bradshaw was informed of and understood his *Miranda* rights and, although there was no written waiver, the record clearly shows he was verbally advised of these rights. See *Thomas v. State*, 268 Ga. 135, 138 (8) (485 SE2d 783) (1997) ("the mere fact that there was no written waiver of *Miranda* rights or other written record of such waiver did not render his statement inadmissible") (Citation omitted.). After receiving the verbal warnings, Bradshaw agreed to speak with law enforcement without an attorney, never requested to

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

stop the interview, was not promised a hope of benefit, and was not coerced into making his statements. Based on the totality of the circumstances, and providing the proper deference to the findings of the trial court, we find no error.

3. Finally, in two enumerations of error, Bradshaw contends that trial counsel rendered ineffective assistance for failing to file a motion to sever his trial from those of his co-defendants and for failing to fully investigate and present evidence that Bradshaw's custodial statements to law enforcement were not given freely and voluntarily. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). "If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other." *Propst v. State*, 299 Ga. 557, 565 (3) (788 SE2d 484) (2016). "In reviewing the trial court's decision, '(w)e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' " (Citation and punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) *Failure to File a Motion to Sever*

Bradshaw first alleges that trial counsel rendered ineffective assistance for failing to file a motion to sever his trial from that of his two co-defendants. We disagree. "To prove deficient performance, one must show that his attorney 'performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.' " (Citation omitted.) *Propst*, 299 Ga. at 565 (3) (a). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (Citation omitted.) *Harrington v. Richter*, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011). Further, in evaluating deficient performance, the proper inquiry "is focused on what the lawyer did or did not do, not what he thought or did not think," as "hindsight has no place in an assessment of the performance of trial counsel." (Citations and punctuation omitted.) *Hartsfield v. State*, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014).

At the hearing on Bradshaw's motion for new trial, counsel testified that she looked into filing a motion to sever, but chose not to because she felt it would be unsuccessful. Bradshaw contends, as he did below, that the motion for severance was necessary because his

defense was antagonistic to that of his co-defendants. But, "(a)ntagonism between co-defendants is not enough in itself to require severance, rather [a defendant] must also demonstrate that he was harmed by the failure to sever." (Citation and punctuation omitted.) *Johnson v. State*, 287 Ga. 767, 770 (2) (700 SE2d 346) (2010). See also *Ballard v. State*, 297 Ga. 248, 255 (8) (773 SE2d 254) (2015) (discussing three-prong test for granting severance in joint trial). Bradshaw has failed to argue all three prongs of the severance test. Because trial counsel cannot be found ineffective for failing to pursue a meritless motion, see *Leonard v. State*, 292 Ga. 214, 217-218 (4) (735 SE2d 767) (2012), Bradshaw has failed to show that his attorney's decision not to file a motion to sever was deficient performance. Consequently, this ineffectiveness claim is without merit.

(b) *Custodial Statements*

Bradshaw also contends that his trial counsel was ineffective for failing to investigate and subsequently challenge the voluntariness of his custodial statements. Namely, Bradshaw alleges that trial counsel should have challenged: (1) that his custodial statements were made without a written waiver of rights; (2) that there was no audio recording from the first interview showing that law enforcement provided Bradshaw with verbal *Miranda* warnings; and, (3) that his statements were not freely and voluntarily made because he was physically assaulted by police and coerced with threats against his wife Teresa. Again, we disagree as the record clearly belies Bradshaw's claims of deficient performance.

During the *Jackson-Denno* hearing, counsel challenged the voluntariness of Bradshaw's statement by questioning the State's witnesses on: whether Bradshaw was read his rights prior to giving a custodial statement; why a written waiver of rights was not utilized in either interview; whether the verbal warnings provided at Bradshaw's first interview were audio recorded; and, if Bradshaw was allowed any communication with his wife. In effect, trial counsel made the first two arguments which are the basis of Bradshaw's claim of ineffective assistance and, as discussed in Division 2, supra, these arguments were properly rejected by the trial court. Accordingly, this portion of his ineffective assistance claim fails.

We are also unpersuaded by Bradshaw's allegation that trial counsel was ineffective for failing to further investigate his claims of physical assault and coercion by law enforcement. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based . . . on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U. S. at 691 (III) (A).

Counsel did not recall Bradshaw relaying any information to her that he was physically assaulted by law enforcement or that threats against his wife induced him to confess. Moreover, trial counsel attempted to interview Bradshaw's wife, but she refused to speak with her regarding the case. Bradshaw has again failed to establish the deficient performance prong of the *Strickland* test. Based on the foregoing, this ineffectiveness claim is also without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 31, 2016.

*W. Rocky Adams*, for appellant.

*Stephen A. Bradley, District Attorney, Jean G. Mangan, Tuttle W. Barksdale III, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.