S16A0786. DAWSON v. THE STATE.
(794 SE2d 132)

</div>

MELTON, Justice.

Following a jury trial, Lonnie Dawson appeals his convictions for malice murder, burglary, and possession of a knife during the commission of a crime, contending that the trial court made certain evidentiary errors and that trial counsel rendered ineffective assistance in numerous ways.[1] For the reasons set forth below, we affirm.[2]

---

[1] On November 8, 2006, Dawson was indicted for two counts of malice murder, eight counts of felony murder, burglary, and two counts of possession of a knife during the commission of a felony. Following a jury trial ending on April 23, 2010, Dawson was found guilty of all charges. The trial court sentenced Dawson to two consecutive terms of life imprisonment for malice murder (one term for each victim), a consecutive twenty years for burglary, and a consecutive five years for each count of possession of a knife during the commission of a felony. Two of the eight felony murder charges were nolle prossed prior to deliberations, and the remaining six charges were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). On May 21, 2010, Dawson filed a motion for new trial and amended it on January 19, 2011, August 19, 2011, and August 22, 2011. The trial court denied the motion, as amended, on November 7, 2011. Thereafter, Dawson timely filed a notice of appeal and, after preparation of transcripts and payment of costs, Dawson's case was assigned to the April 2016 term of this Court and submitted for decision on the briefs.

[2] Because this case was tried before January 1, 2013, Georgia's old Evidence Code must be applied. See Ga. L. 2011, p. 99, § 101.

1. In the light most favorable to the verdict, the record shows that Dawson and his wife, Lisa, were married in September 2002. In September 2005, Lisa started work as a victim service officer in the Solicitor-General's Office of Clayton County. Lisa told friends and co-workers about incidents of verbal and physical abuse by Dawson. In June 2005, Lisa asked Dawson to move out of her home, which she had acquired before the marriage, and she collected keys to the house from Dawson. Dawson then moved into an apartment.

In the early part of March 2006, Lisa told Dawson that she had met Kenneth Sands. Lisa and Sands met for a date on March 21, 2006. The following day, police discovered the bodies of Lisa and Sands in her bedroom. Lisa's body was on top of Sands's body, and both were wedged into the gap between the bed and the wall. Lisa had been stabbed 62 times, and Sands had been stabbed 71 times.

During the ensuing investigation of the murders, police located Dawson's truck in the vicinity, and a search warrant was executed. Dawson's blood was found on the steering wheel, gear shift, and seat belt. Blood samples collected from the back door of the truck and from Dawson's jeans, which were later collected, were determined to belong to Lisa and Sands. Dawson was arrested for the murder of both individuals.

In jail, Dawson spoke to his cellmate, Marvin Amey, about the murders. In those conversations, Dawson recounted that he drove his truck to Lisa's house on the early morning of the murders and parked down the road. He used a key to get in through the back door, and he was carrying a knife with him. Once inside, he also grabbed a steak knife from the kitchen. Unseen, Dawson listened to Lisa and Sands and waited for them to go to sleep. He heard Sands snoring, which made him angry, and he slipped into the bedroom. Dawson recounted that he stabbed Lisa in the chest and cut her throat after she called his name. Sands, whom Dawson also stabbed, tried to fight, but he was too weak from blood loss. Dawson continued to stab him as he tried to get under the bed. Lisa crawled onto Sands's body as she died. Dawson then cleaned up the room, left, and drove to a gas station near his sister's house. He threw the knife away and wiped down his truck. Neighbors, who were familiar with Dawson's truck, said they saw his black truck near Lisa's house around the time of the crimes.

Following the murders, Dawson arrived at his sister's home, disoriented and with a bleeding hand. He was transported to Southern Regional Medical Center, and he was treated for a serious laceration on his finger.

This evidence was sufficient to enable the jury to find Dawson guilty of the crimes with which he was charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Dawson maintains on appeal, as he did at trial, that he committed the murders in the heat of passion and should have only been found guilty of voluntary manslaughter,

> the jury, which was . . . instructed on malice murder and voluntary manslaughter, was entitled to reject [Dawson's] claim that when he killed [Lisa and Sands], he was "act[ing] solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a).

*Sears v. State*, 298 Ga. 400, 404 (1) (b) (782 SE2d 259) (2016).

2. Dawson argues that the trial court erred by excluding testimony from Beverly Sims-Mitchell, who initially processed Dawson when he was treated at the hospital following the murders and administered a mental and physical evaluation during Dawson's initial assessment. Dawson maintains that Sims-Mitchell's testimony would have somehow supported his contention that he committed voluntary manslaughter, not murder.[3] Specifically, Dawson argues that Sims-Mitchell would have testified that Dawson was not thinking clearly on the morning following the murders. Dawson, however, never proffered at trial or at the hearing on his motion for new trial what Sims-Mitchell's testimony actually would have been. In any event, Dawson called numerous witnesses who testified that he was acting abnormally on the morning after the murder, including his sister and the pastor of his church. Sims-Mitchell's testimony would have been simply more of the same. We find no abuse of the trial court's broad discretion in choosing to exclude this testimony.

3. Dawson contends that the trial court erred by allowing the State to improperly prove the underlying facts of a 1992 similar transaction using hearsay evidence. Following a hearing, the trial court determined that the State would be allowed to present evidence of this similar transaction in which Dawson pled guilty to simple assault after holding a steak knife to the neck of a former girlfriend. At trial, the State presented this similar transaction through the testimony of Detective James Askew and a redacted sentencing form

---

[3] Because Dawson had chosen not to pursue a defense of insanity or incompetence, the trial court determined that any psychological conclusions made by Sims-Mitchell would have been irrelevant.

which shows that Dawson pled guilty to simple assault rather than a felony. The sentencing form, however, contains no statement of the facts underlying the plea. The State elicited these facts solely through the testimony of Detective Askew, who, in turn, relied solely on statements he received from the victim at the time that the assault was being investigated. The victim of the prior transaction, however, did not testify. Prior to Detective Askew's testimony, Dawson objected on the basis that the victim's statements to Detective Askew were hearsay, and the use of her statements as evidence violated his Confrontation Clause rights. See *Crawford v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004). The trial court overruled this objection.

Assuming without deciding that the trial court erred by admitting the factual basis for the similar transaction in this way, the admission of this evidence, in light of the overwhelming evidence of Dawson's guilt was harmless beyond a reasonable doubt. Dawson's defense was not that he did not kill Lisa and Sands, only that he did so when enraged and in the heat of passion. The overwhelming evidence, however, shows that Dawson drove to Lisa's home, broke into her home, and eavesdropped on her for some time — long enough for them to fall asleep — prior to committing the murders. This evidence is directly inconsistent with Dawson's contention that he acted in the heat of passion. There was no harm.

4. Dawson maintains that he was denied a fair trial because a number of the State's witnesses were allowed to use the term "murder" during their testimony. We disagree. In at least two prior cases, we have rejected similar claims. See *Laney v. State*, 271 Ga. 194, 196 (7) (515 SE2d 610) (1999) ("The trial court did not err in permitting the prosecutor to use the word 'murder' instead of 'homicide.'"); *James v. State*, 270 Ga. 675 (4) (513 SE2d 207) (1999) (addressing a motion for mistrial made in response to a witness's use of the word "murder"). Here, Dawson has failed to show that the term "murder" was used in an inappropriate way to influence the jury. See *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006) ("In order to have reversible error, there must be harm as well as error"); *Stinski v. State*, 286 Ga. 839, 843 (9) (691 SE2d 854) (2010). Moreover, the evidence that Dawson actually did commit the murders of Lisa and Sands was overwhelming.

5. Dawson argues that the trial court erred by preventing him from eliciting good character evidence from his reverend, Timothy McDonald. As an initial matter, Dawson has made no proffer of what Reverend McDonald's testimony on this point might be. No proffer was made at the trial, and Reverend McDonald was not called as a witness at the motion for new trial hearing. "Without a proffer of

evidence that would have been admissible and favorable to his case, [Dawson] has failed to demonstrate a reasonable probability that the testimony of [this] witness[ ] would have affected the outcome at trial." *Thomas v. State*, 282 Ga. 894, 896 (2) (a) (655 SE2d 599) (2008). In any event, the transcript shows that Dawson was allowed to ask Reverend McDonald questions about his involvement in the church and extracurricular activities in which he engaged. Dawson has failed to show any reversible error. See *Stinski*, supra.

6. Dawson contends that his trial counsel rendered ineffective assistance in multiple ways. We disagree.

> In order to succeed on his claim of ineffective assistance, [Dawson] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Dawson contends that trial counsel should have recorded his pretrial interviews with Amey, who stated during these interviews that he had been "fed" facts about the murders from police. The record shows that trial counsel did present this information to the jury through the direct examination of his investigator, who had conducted an interview of Amey and had taken notes of his answers. In these notes, the investigator had written down Amey's indications that he had been supplied with the facts of the murders by police, not Dawson. Dawson has not shown that trial counsel's actions were unreasonable in this regard. The jury still received the information in question; trial counsel merely made a reasonable decision as to how that information was presented. *Wright*, supra at 870 (2). In any event, Dawson employs hindsight to support his claims, but "hindsight has no place in an assessment of the performance of trial counsel," *Simpson v. State*, 298 Ga. 314, 318 (3) (781 SE2d 762) (2016).

(b) Dawson argues that trial counsel failed to demand a proper evidentiary hearing to determine whether the statements that he made to Amey in jail were admissible pursuant to *Massiah v. United States*, 377 U. S. 201 (84 SCt 1199, 12 LE2d 246) (1964) (right to counsel is violated by the admission of incriminating statements which a government agent deliberately elicits after indictment and in the absence of counsel). The record shows that trial counsel filed a motion for a pretrial determination of the admissibility of Amey's testimony, which was argued on the morning of trial. Though this motion was not made pursuant to *Massiah*, trial counsel did, in fact, contend that Amey's statements were inadmissible because he had been given information about the murders from police officers, not Dawson. Dawson now contends that there should have been a full evidentiary hearing. Even if this was true, Dawson has presented no argument or additional evidence that would have been presented at the hearing that would support a contention that Amey was acting as a government agent or render Amey's statements inadmissible pursuant to *Massiah*. There was no prejudice.

(c) Dawson contends that trial counsel failed to object to the admission of a redacted indictment of his 1992 conviction and sentence, used to prove the similar transaction discussed above, for which Dawson was indicted for aggravated assault and giving a false name, but pled guilty to simple assault. Specifically, Dawson argues that the mention of a "felony sentence" on the disposition improperly suggested that Dawson was convicted of a felony. The record shows, however, that when this redacted indictment was introduced, Detective Askew testified that Dawson actually pled to simple assault, which was also reflected in the redacted exhibits. Again, there was no prejudice.

(d) Dawson contends that trial counsel failed to object or move for a mistrial each time one of the State's witnesses used the term "murder" in his or her testimony. He argues generally that the repeated use of the term somehow prejudiced his defense. Trial counsel testified at the motion for new trial that he did not move for a mistrial because he thought any such motion would be unsuccessful, so he tried to address the problem with objections instead. Dawson has not shown that this choice was unreasonable trial strategy. See, e.g., *Wright*, supra. The record also shows that trial counsel did, in fact, object twice when the prosecutor used the term "murder," but he felt that it would not be useful to object repeatedly throughout trial. There was no ineffective assistance.

(e) Dawson argues that trial counsel was ineffective in failing to object to Officer Gregory's testimony about a prior difficulty between Dawson and Lisa. Specifically, Dawson contends that the State failed

to lay a proper foundation for Officer Gregory's testimony by not eliciting information showing that Lisa had been the person whom Officer Gregory interviewed when he investigated the prior difficulty. Even presuming that Dawson's trial counsel performed deficiently, there is no prejudice. A review of the record provides evidence that Officer Gregory knew Lisa's identity, including the fact that he took photos of Lisa on the day of this prior incident, and those photos were included in the record.

(f) Dawson contends that trial counsel should have objected to Renee Wheeler's testimony regarding a conversation she had with Dawson about Lisa and his relationship with her. Specifically, Dawson contends that the State never laid a sufficient foundation to show that Wheeler knew that Dawson was actually the person with whom she was speaking. The record shows, however, that Dawson, in fact, placed the call to Wheeler and did so to ask her about Lisa. "[T]here [must] be a sufficient basis for a witness to identify a person with whom he spoke over the telephone, before testifying as to the contents of the conversation." *Brown v. State*, 266 Ga. 723, 725 (3) (470 SE2d 652) (1996). Here, the evidence shows that Wheeler knew both Dawson and Lisa well. There was neither deficient performance nor prejudice.

(g) Dawson contends that trial counsel was ineffective for not objecting to Darlene Johnson-Riggins's testimony as to Lisa's invocation of spousal privilege with regard to a prior instance of spousal abuse. Specifically, Dawson maintains that the State was allowed to ask questions outside the scope of re-direct examination. During the cross-examination of Darlene Johnson-Riggins, a friend and co-worker of Lisa, trial counsel asked the witness if Lisa ever took any court action against Dawson, to which Johnson-Riggins replied "not during the time that I knew her." On re-direct, the prosecutor asked Johnson-Riggins if she was familiar with a prior court action involving Dawson, to which she replied affirmatively. When asked about the prior proceedings, Johnson-Riggins responded, "[Lisa] chose to, as many victims do, invoke her marital privilege. And so that case was dismissed." Even assuming that trial counsel should have objected to this testimony, Dawson has failed to show prejudice, given the overwhelming nature of the evidence against him.

(h) Dawson argues that trial counsel was ineffective by failing to object to the introduction of leasing documents signed by Dawson to obtain an apartment after his separation from Lisa. Tina Wright, a representative of Dawson's apartment complex, testified to a copy of the lease agreement executed by Dawson. The agreement contained information that Dawson was separated, divorcing, and had a description of his truck, including a tag number. As the lease was properly

admitted under the former business records exception to the rule against hearsay, see former OCGA § 24-3-14 (b), Dawson has failed to show deficient performance. Furthermore, in light of all the evidence against him, he has failed to show prejudice, even if the lease document had been improperly admitted.

(i) Dawson maintains that trial counsel was ineffective for not moving that certain testimony of Sharlie Sullivan be stricken from the record and that curative instructions be given. Sullivan, a friend of Lisa's, testified about general domestic problems Lisa had with Dawson. Sullivan began testifying about a time that Dawson and Lisa argued, stating, "[I]f I'm right, I think [Dawson] put his hands around her neck, I'm not sure." Trial counsel objected, arguing that the testimony was mere speculation. The trial court sustained the objection. Dawson now contends that trial counsel performed deficiently by not also requesting that the testimony be stricken and that the jury be given a curative instruction. Dawson, however, makes no argument in his brief indicating exactly how he may have been harmed by trial counsel's actions. Dawson has not borne his burden to show ineffective assistance of counsel.

(j) Dawson contends that trial counsel was ineffective by not making a motion for a mistrial after Sullivan testified that she told Lisa to be careful after Lisa said that she thought Dawson had been to her home when she was not there. Trial counsel objected and asked that the testimony be stricken, and the trial court sustained the objection and instructed the jury to disregard the testimony. Though Dawson argues that trial counsel was ineffective in not following up with a motion for mistrial, he failed to question trial counsel why he failed to ask for a mistrial, and he does not show that he suffered any prejudice in this situation. Therefore, his claim of ineffective assistance fails.

(k) Dawson argues that trial counsel was ineffective for failing to move for a directed verdict of acquittal on the charge of burglary, contending that no evidence showed he was "without authority" to enter Lisa's home. See OCGA § 16-7-1 (b). Dawson's argument is belied by the record. Testimony showed that Lisa broke up with Dawson, instructed him to move out of her home, and collected all of the house keys from him. The evidence further showed that Dawson snuck into Lisa's home in the middle of the night, spied on her, and then brutally murdered her. The evidence, therefore, supported the jury's finding that Dawson was guilty of burglary, and trial counsel was not ineffective for failing to make a meritless motion for directed verdict on this count.

(l) Dawson contends that trial counsel should have elicited more character evidence from Reverend McDonald after the trial court

restricted his questioning and that trial counsel was ineffective for not doing so. The transcript shows that trial counsel successfully elicited testimony from Reverend McDonald concerning Dawson's work as an usher in the church, as well as his work with church youth. Trial counsel was able to get this testimony even after the trial court limited questions about good character evidence. Dawson now maintains that trial counsel should have developed even more evidence, though he has not identified what further testimony could have been elicited. He has also failed to argue that he was prejudiced in any particular way. "The failure of trial counsel to employ evidence cannot be deemed 'prejudicial' in the absence of a showing that such evidence would have been relevant and favorable to the defendant." (Citations and punctuation omitted.) *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in Divisions 1, 2, 4, 5, and 6 and concurs in judgment only in Division 3.*

<div align="center">

DECIDED NOVEMBER 21, 2016 —
RECONSIDERATION DENIED DECEMBER 8, 2016.

</div>

*Keith C. Martin; Sean H. Joyner*, for appellant.

*Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Michael D. Thurston, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General*, for appellee.