300 Ga. 899
FINAL COPY

S17A0347.  CLARK v. THE STATE.

HINES, Chief  Justice.

Following the denial of his motion for new trial, as amended, Clarence Clark appeals his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the fatal shooting of Marlon Brown.  His sole challenge is that his trial counsel was ineffective in two respects: in failing to object to the use of the term "murder" during trial testimony and in not objecting to the introduction into evidence of his statement to police.  Finding the challenge to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following.

---

[1] The murder and related crimes occurred on February 5, 2008.  On July 1, 2008, a Fulton County grand jury returned an indictment against Clark charging him with malice murder, felony murder while in the commission of aggravated assault, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.  He was tried before a jury October 20-24, 2014, and found guilty of all charges.  On October 27, 2014, Clark was sentenced to life in prison for malice murder and a consecutive five years to serve on probation for the firearm possession; the felony murder stood vacated by operation of law and the aggravated assault was found to merge for the purpose of sentencing. A motion for new trial was filed on October 30, 2014, and an amended motion for new trial was filed on April 11, 2016.  The motion for new trial, as amended, was denied on June 15, 2016.  A notice of appeal was filed on July 5, 2016, and the case was docketed in this Court for the term beginning in December 2016.   The appeal was submitted for decision on the briefs.

Clark intended to spend the night of February 5, 2008 with his sister, Xaviera Wood, and her children at her apartment because it was closer to the site of a job interview he had the following day. Once there, Wood told him about an earlier altercation she had with Brown, who was her on-again, off-again boyfriend and the father of one of her children. Brown and Wood had an argument which became physical to the point that they were "exchanging licks." Brown left, taking with him keys to Wood's apartment; he threatened her as he was leaving. Subsequently, as Wood was packing Brown's belongings, she came across his handgun; she gave the handgun to Clark who took possession of it. To prevent Brown from potentially returning and re-entering the apartment, Wood tried to barricade the front door with a child's playpen and other furnishings. Later, upon hearing the front door "jiggle" and seeing the barricade move, Clark ran toward the front door where he met Brown coming in. He pushed Brown out, telling him he was not welcome. The two men went outside into a breezeway, and Brown began cursing and making threats against Wood, and hurling a racial epithet at Clark. Clark "pulled" the handgun from his pocket, "aimed it up," and ordered Brown to leave. Brown was approximately twelve feet from Clark. Clark claimed that Brown then "charged" at him at which point Clark "kind of

2

blacked out." When he "came to" he was no longer in the apartment breezeway but outside in the parking lot. Clark had "chased" or "followed" Brown, and fired multiple gunshots.

Brown was shot in the chest, back, head, and arm. The back and head injuries were consistent with Brown being shot from behind as he was attempting to run from his assailant. A blood trail led from the parking lot to Brown's body. One shell casing was found in the breezeway in front of Wood's apartment while another was found "ninety-one steps" away next to Brown's body.

Initially, Clark told the police he did not know anything about the incident. Approximately two months later, he voluntarily came to the police station to be interviewed. There Clark orally indicated that he understood his *Miranda* [2] rights and he also executed a written waiver of those rights. Even though Clark claimed to have "blacked out" during the incident, he was able to give the police details about what happened. He admitted to chasing Brown and telling him to stop. At no point did he indicate that Brown touched him or had a weapon of any kind. Clark was then arrested for murder.

---

[2] *Miranda v. Arizona,* 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

1. Although Clark does not challenge the legal sufficiency of the evidence of his guilt, in keeping with this Court's general practice in appeals of murder cases, this Court has reviewed the record and concludes that the evidence at trial was sufficient to enable a rational trier of fact to find Clark guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Clark contends that his constitutional right to effective assistance of counsel was violated in two respects. However, in order to show that his trial counsel was ineffective Clark must demonstrate

> that his counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy

4

either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other.

*Capps v. State*, 300 Ga. 6, 7-8 (2) (792 SE2d 665) (2016), quoting *Hendrix v. State*, 298 Ga. 60, 61-62 (2) (779 SE2d 322) (2015) (punctuation omitted).

(a) Clark first claims that his trial counsel was ineffective for not attempting to exclude use of the term "murder" at trial and for not objecting to several references by the State to Brown's death as "murder" during its examination of some witnesses, including Clark. But, the claim is without merit.

First as Clark concedes, the jury received instructions making it clear that it was its duty to determine whether he murdered Brown. Moreover, the jury was also instructed, inter alia, about the presumption of Clark's innocence, the State's burden of proof, and the elements of the crimes of malice murder and felony murder. See *Nguyen v. State*, 279 Ga. App. 129, 133 (5) (b) (630 SE2d 636) (2006) (in circumstances in which jury was properly instructed on the elements of rape and the State's burden of proof, trial counsel's failure to file

5

motion in limine to prevent State and its witnesses from using term "rape" during rape trial did not constitute ineffective assistance of counsel). Furthermore, this Court has rejected the claim that a defendant is denied a fair trial because witnesses use the term "murder" during their testimony. *Dawson v. State*, 300 Ga. 332, 335 (4) (794 SE2d 132) (2016). And, Clark has failed to show that the term "murder" was used in an inappropriate manner to influence the jury or that he was harmed in any way by its use. Id. Indeed, the evidence overwhelmingly supports the jury's determination that the killing was not justified. Id. Even assuming arguendo that trial counsel was deficient in not challenging the terminology, no prejudice has been shown, and therefore, this assumption fails to provide a basis for a claim of ineffectiveness of counsel. *Strickland v. Washington*, supra.

(b) Clark further claims that his trial counsel was ineffective for not challenging the admission into evidence of his videotaped statement to police.[3] In regard to the statement, he concedes that he voluntarily came to the police

---

[3] In his brief, Clark also intones that admission of his statement violated his constitutional right not to incriminate himself, but he does not pursue this claim outside the confines of his contention of ineffectiveness of trial counsel, and therefore, has abandoned it as an independent claim.

station and that he waived his *Miranda* rights but asserts that his statement was involuntary because once at the police station he was not free to leave but was not told prior to his statement that he was under arrest, and that "a suspect will react differently knowing he is under arrest." He further maintains that the statement was inconsistent with his claim of self-defense, and therefore, was prejudicial to his defense.[4]

As the superior court found in denying Clark a new trial, his claim that the failure to advise him that he was under arrest rendered the interview involuntary is unavailing. Even when a defendant is in custody for several days before being interviewed and obviously has knowledge of his confinement, the fact of custody, in and of itself, does not render the defendant's subsequent statement involuntary. See *Harris v. State*, 297 Ga. App. 589, 591 (1) (677 SE2d 763) (2009). Also, as noted by the superior court, it is unclear whether Clark was arrested or in custody prior to or during the interview; but, in any event that is not relevant to the analysis. Clark came to the police station voluntarily, and

---

[4] The basis of the claim of inconsistency is that in his statement, Clark says that he "chased" Brown, but in his testimony, he says that he "followed" Brown. Clark argues that unlike "following," "chasing" your victim is inconsistent with a self-defense argument in that "chasing a person connotes a willful intent, while following is . . . much more subtle" and promotes the view that he intended only to ensure that Brown did not return to harm Wood.

even if subsequently he was in custody, he was given the *Miranda* warnings and executed a full waiver of his rights. Those facts would not change once he was in custody or under arrest. And, Clark has not shown any coercion in regard to his statement. Under these circumstances, there is no error in the superior court's determination that Clark's statement was made voluntarily; thus, defense counsel's failure to challenge the statement cannot provide a meritorious basis for the claim of counsel's ineffectiveness. *Bradshaw v. State*, 300 Ga. 1, 5 (3) (b) (792 SE2d 672) (2016).

In addition, trial counsel made plain at the motion-for-new-trial hearing that the decision not to object to admission of the statement was strategic. Counsel reviewed the statement with Clark and felt that it was consistent with Clark's testimony at an earlier immunity hearing in the case, that it would support his anticipated testimony at trial, and that there was nothing in the statement that would have been problematic for the jury to hear. Moreover, counsel explained that had Clark ultimately decided not to testify at trial, counsel believed that they still could have attempted to show self-defense by virtue of admission of the statement. A deliberate choice of trial strategy and tactics is the province of trial counsel after consultation with the client, and in

8

order to show deficient performance of trial counsel in regard to trial strategy, an appellant must demonstrate that counsel's decision was so patently unreasonable that no competent attorney would have made it under the circumstances at the time. *Smith v. State*, 300 Ga. 532 (__ SE2d __) (2017). This Clark has failed to do. The fact that Clark and his present counsel may now find fault with the strategy and tactics employed at trial does not support a finding that trial counsel failed to provide effective assistance to Clark. *Byrd v. State*, 274 Ga. 58, 60 (2) (548 SE2d 2) (2001).

<u>Judgment affirmed. All the Justices concur.</u>

Decided April 17, 2017.

Murder. Fulton Superior Court. Before Judge McBurney.

<u>Zell & Zell, Rodney S. Zell</u>, for appellant.

<u>Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General</u>, for appellee.